UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID JOHN CANNON,<br><br>Defendant. | No. 1:16-cr-00183-DAD-BAM<br><br>ORDER DENYING DEFENDANT'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. Nos. 68, 71) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought on behalf of defendant David John Cannon. (Doc. Nos. 68, 71.) That motion is based in part on the purported risks allegedly posed to defendant Cannon by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On November 10, 2016, defendant Cannon was indicted on one count of receipt or distribution of material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2). (Doc. No. 1.) On August 6, 2018, defendant entered a plea of guilty to that charge, which carried with it a penalty of a minimum mandatory five-year term of imprisonment up to a maximum twenty-year term of imprisonment. (Doc. Nos. 42; 40 at 7.) On November 13, 2018, the court sentenced defendant Cannon to 108 months in the custody of the U.S. Bureau of Prisons

1

("BOP"), to be followed by a 120-month term of supervised release.  (Doc. Nos. 56, 57, 66.)  The court also ordered defendant to pay the mandatory special assessment in the amount of $100.00 and a $5,000.00 special assessment pursuant to the Justice for Victims of Trafficking Act of 2015 (18 U.S.C. § 3014), as well as restitution to the victims of his offense in the amount of $5,500.00. (Doc. Nos. 66 at 7–8; 57 at 7.)

Defendant is now serving his sentence at Federal Medical Center Fort Worth ("FMC Forth Worth") in Fort Worth, Texas.  (Doc. No. 71 at 3.)  As of the date of this order, defendant Cannon has served approximately only 21 months of his 108-month prison sentence.  (*See* Doc. Nos. 71 at 5; 72-1 at 4.)

On April 29, 2020, defendant Cannon tested positive for COVID-19, and according to the government and defendant's medical records, he experienced an asymptomatic infection.  (Doc. Nos. 71 at 5; 71-2 at 6; 72 at 4.)

On June 22, 2020, defendant filed a *pro se* motion seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 68.)  The court referred defendant's motion to the Federal Defender's Office ("FDO").  (Doc. No. 69.)  On August 21, 2020, the FDO filed a supplemental motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on behalf of defendant Cannon.  (Doc. No. 71.)  The government filed its opposition to the pending motion on September 21, 2020, and on October 13, 2020, defendant filed his reply thereto.  (Doc. Nos. 72, 75.)

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.").  Those limited circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their

own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, 2:98-cr-00749-CAS, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit

---

enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*Rodriguez,* 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, Case No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.     Administrative Exhaustion**

Defendant asserts, and the government does not dispute, that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. Nos. 71 at 8; 72 at 3.) Because failure to exhaust is normally viewed as an affirmative defense, the court will accept the government's concession and turn to the merits of defendant's motion.

**B.     Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G.

§ 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 2020 WL 2572525, at *9–10 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, No. 2:03-cr-

00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[4]

Defendant Cannon argues that extraordinary and compelling reasons warranting reduction of his custodial sentence exist because: (1) he "suffers from a myriad of serious health conditions" that according to the Centers for Disease Control and Prevention ("CDC"), place "him at a high risk of serious complications from COVID-19," and (2) he is incarcerated in FMC Fort Worth, "where nearly 50% of the inmate population has been infected with COVID-19." (Doc. No. 71 at 3) (citing *See People Who Are at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated October 6, 2020)). In particular, defendant asserts that he suffers from "obesity with a [body mass index] BMI of 35, hyperlipidemia, obstructive sleep apnea, hypertensive heart disease with heart failure, atherosclerosis, and cervical disc disorder," and he uses a continuous positive airway pressure machine and is currently prescribed several medications to manage those conditions. (*Id.* at 5.) In addition, defendant Cannon suffered a heart attack in April 2018. (*Id.*) Defendant contends that his health conditions, especially his obesity, heart failure, and hypertension, place him at an increased risk of suffering severe illness from COVID-19 based on CDC guidance identifying those medical conditions as risk factors. (*Id.*) Moreover, defendant argues that even though he has already contracted COVID-19, having tested positive for the virus on April 29, 2020, and experienced an

---

[4] Here, however, because defendant Cannon is only 49 years old (Doc. No. 71 at 3), his age and age-related factors do not play a role in consideration of his pending motion.

7

asymptomatic infection, he nevertheless still faces a risk of serious illness if he were to be re-infected with COVID-19.  (*Id.*)

Defendant Cannon also asserts in conclusory fashion that in light of his medical conditions and his incarceration, he is unable to provide self-care during this pandemic because he cannot take "extra precautions to maintain hygiene, a sterile environment, and physical distance from others."  (*Id.* at 11.)  Further, defendant emphasizes that there have been 12 deaths among prisoners attributed to COVID-19 at FMC Fort Worth, which he contends "prove[s] they are unable to manage the spread of COVID-19."  (*Id.* at 11–12.)  Accordingly, defendant argues that his "medical conditions that place him at severe risk of illness or death if he recontracts the virus, combined with the BOP's inability to properly control the outbreak of COVID-19 in its Fort Worth FMC facility," constitute extraordinary and compelling reasons that warrant his compassionate release.  (*Id.* at 12.)

In its opposition, the government argues that defendant has failed to carry his burden to establish his eligibility for compassionate release because he "is 49 years old, has served only about 19.1 percent of his sentence, and does not have a terminal illness, nor does he have a condition that diminishes his ability of self-care within the prison facility."  (Doc. No. 72 at 7.)  In addition, the government contends that "the mere existence of COVID-19 in society" or in the correctional institution where defendant is imprisoned is not an extraordinary and compelling reason for his release.  (*Id.* at 7, 8.)  While the government concedes that defendant's obesity and heart condition are CDC-recognized risk factors that increase defendant's risk of suffering severe illness from COVID-19, the government argues that defendant's concerns in that regard are undermined by the fact that he "contracted, and recovered from, COVID-19 with no symptoms and no apparent complications."  (*Id.* at 8–9).  Though the government also recognizes that "[t]he science surrounding COVID-19 is still developing," the government emphasizes that defendant's "asymptomatic case of the coronavirus and recovery is an extremely positive sign for him" and "means that he has endured the illness seemingly without substantial adverse health outcomes and has returned largely to his baseline health status."  (*Id.* at 11.)  Moreover, the government argues that "[h]is recovery from an asymptomatic case of COVID-19 underscores the reality that, even

8

1   with his combination of health concerns and age of 49, infection did not result in serious
2   complications," and that the "BOP medical staff responded quickly, and they continually
3   monitored him until he had recovered." (*Id.*)
4   　　　In his reply, defendant does not dispute that he experienced an asymptomatic COVID-19
5   infection, or that the BOP staff at FMC Fort Worth monitored him and continued to provide him
6   medical care. Rather, defendant merely reiterates his argument that his "underlying medical
7   conditions combined with the growing spread of COVID-19 and the need to decrease prison
8   populations constitute an extraordinary and compelling reason for compassionate release." (Doc.
9   No. 75 at 6.)
10   　　　As an initial matter, regarding the government's contention that defendant's motion is
11   based on a speculative argument about the risks posed to him of reinfection with COVID-19
12   (Doc. No. 72 at 11), the undersigned does not discount the possibility of reinfection from the
13   virus. As one district court has observed: "Without scientific conclusions as to whether
14   reinfection is possible or how long COVID-19 immunity lasts, [courts have] err[ed] on the side of
15   caution to avoid potentially lethal consequences." *States v. Yellin*, No. 3:15-cr-3181-BTM-1,
16   2020 WL 3488738, at *13 (S.D. Cal. June 26, 2020); ); *see also United States v. Hanson*, No.
17   6:13-cr-00378-AA-1, 2020 WL 3605845, at *4 (D. Or. July 2, 2020) ("[T]here is no current
18   scientific evidence to indicate that a 'recovered' COVID-19 patient is immune from reinfection,
19   as several courts have recently acknowledged."); *but see United States v. Molley*, No. 15-cr-0254-
20   JCC, 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020) (concluding that the uncertainty
21   surrounding the danger of re-infection with COVID-19 "cuts against compassionate release," in
22   part because it is the defendant's burden to establish that "extraordinary and compelling" reasons
23   for release exist). Erring on the side of caution, the court finds that defendant's fear of
24   reinfection, and the potential consequences to him were that to occur, to be potentially well-
25   placed. Nevertheless, as explained below, the court does not find compelling or extraordinary
26   reasons warranting a reduction in defendant's sentence at this time.
27   　　　It is undisputed that according to the CDC, "[a]dults of any age" who have certain medical
28   conditions including "[h]eart conditions, such as heart failure," and obesity with a BMI of 30 or

9

higher, are "at increased risk of severe illness from the virus that causes COVID-19," and adults with hypertension "might be at an increased risk for severe illness from the virus that causes COVID-19." *See People Who Are at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated October 6, 2020); (Doc. Nos. 71 at 3; 72 at 8–9). Defendant has shown that because he suffers from these medical conditions, he is at an increased risk for suffering severe illness if he were to be re-infected with COVID-19. However, defendant Cannon has not shown, or even argued for that matter, that FMC Fort Worth is unable to monitor and adequately treat his medical conditions. *See United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation marks and citation omitted); *see also United States v. McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) ("Since Defendant has contracted COVID-19, the relevant questions concern (1) the course of his illness, (2) the state of his health, (3) his prognosis, and (4) the adequacy of the care and treatment being provided to him in BOP given his pre-existing conditions. . . . There is no evidence that the circumstances surrounding Defendant's health or treatment are extraordinary or compelling."). In fact, the extensive medical records filed by defendant in support of his motion suggest that FMC Fort Worth is providing him adequate medical care because he is being prescribed and provided the medications necessary to self-care for his health conditions. (*See* Doc. Nos. 71-1, 71-2.)

Moreover, defendant Cannon has not persuasively argued that he is being prohibited from taking appropriate precautions to avoid contracting COVID-19 and that his ability to provide self-care at FMC Fort Worth is substantially diminished. *See United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL 1975372, at *3 (D. Nev. April 24, 2020) ("[T]he presence of COVID 19 . . . necessitates a more expansive interpretation of what self-care means" and thus the inability of individuals at high risk of becoming severely ill from COVID-19 to practice appropriate hygiene, wear a mask and maintain social distancing is an inability to provide self–care) (citation omitted). Rather, in his pending motion, defendant merely asserts that because "[i]n prison he must live,

work, and sleep in close proximity to others," he cannot take "precautions to maintain hygiene, a sterile environment, and physical distance from others." (Doc. No. 71 at 11.) Defendant Cannon does not provide any specific allegations regarding any lack of access to protective gear or cleaning and sanitizing supplies, or lack of ability to social distance at FMC Fort Worth specifically. Defendant simply states in his reply that the BOP has failed to stop the spread of the virus and points to the fact that "[t]here [have] been 628 cases of COVID-19 confirmed at FMC Fort Worth and 12 deaths contributed to the virus at the facility." (Doc. No. 75 at 4.) But, he has not provided any evidence regarding the conditions that he is currently facing at FMC Fort Worth, or the ways in which he is unable to provide self-care at FMC Fort Worth as a result of those conditions.

The court certainly recognizes that FMC Fort Worth initially failed to control the outbreak of COVID-19 at that institution, as evidenced by the high number of inmates that have tested positive for the virus and the death of 12 inmates. *See United States v. Degarmo*, No. 18-cr-10128-01-JWB, 2020 WL 5253410, at *3 (D. Kan. Sept. 3, 2020) (finding that "inmates and staff at FMC Fort Worth have contracted and currently have COVID-19 in numbers higher than many other federal detention facilities"). That situation is obviously an extremely serious one. However, the infection rate at FMC Fort Worth has since dropped considerably. As the government noted at the time of filing its opposition on September 21, 2020, there were then "31 inmates and 9 staff positive for COVID-19" at that facility. (Doc. No. 72 at 5.) Indeed, as of October 15, 2020, the BOP now reports that only one inmate and 10 staff members are confirmed as having active COVID-19 cases at FMC Fort Worth. *See* https://www.bop.gov/coronavirus/ (last reviewed Oct. 15, 2020).[5] Further, as noted above, it appears that the prison medical staff at FMC Fort Worth have been able to, and continue to, adequately monitor defendant's various medical conditions and care for him. Thus, the court is not persuaded that extraordinary and compelling reasons exist warranting defendant's compassionate release based on his medical

---

[5] The undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results. However, there is also no evidence before the court contradicting those reported numbers.

conditions and incarceration at FMC Fort Worth. *See United States v. Dominguez*, No. 1:16-cr-35-HAB, 2020 WL 5700742, at *3 (N.D. Ind. Sept. 24, 2020) (recognizing "that FMC Fort Worth has one of the highest positive test numbers in the BOP at 622" but concluding that despite those high numbers, "there is nothing that leads the Court to believe that FMC Fort Worth cannot protect Defendant from the virus or treat him should he become infected").

Accordingly, the court concludes that defendant Cannon has not met his burden of demonstrating extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A). Therefore, his motion will be denied.

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Cannon's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[6] *See Parker*, 2020 WL 2572525, at *11.

As noted above, on November 13, 2018, the court sentenced defendant Cannon to 108 months in the custody of the BOP following his entry of a guilty plea to receipt and distribution of material involving the sexual exploitation of minors. (Doc. Nos. 56, 57, 66.) Forensic examination of the devices seized from the defendant's residence identified approximately 1,016 images of child pornography and 32 videos of child pornography and revealed the existence of defendant's cloud storage account containing approximately 101 images of child pornography and 155 videos of child pornography, for which the defendant was held accountable in calculating

---

[6] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

1    his offense level under the U.S. Sentencing Guidelines.  (Doc. No. 47 at 4–6.)  In light of this
2    evidence, the nature of those depictions, the age of those depicted, and with defendant's
3    acceptance of responsibility acknowledged, it was determined that his total adjusted offense level
4    was 34 and his lack of criminal history placed him in category I.  (*Id.* at 4–9.)  This resulted in an
5    advisory sentencing guideline range calling for a term of imprisonment of 151 to 188.  (*Id.* at 3,
6    17.)  The probation officer recommended a slightly below guideline sentence of 121 months in
7    BOP custody in light of consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).
8    (*Id.*)  The undersigned varied downward to an even greater degree after considering those factors
9    and sentenced defendant Cannon to a 108-month term of imprisonment to be followed by a 120-
10   month term of supervised release with the mandatory penalty assessments totaling $5,100 and
11   imposed a restitution order in the amount of $5,500.00.  (Doc. Nos. 57, 66.)

12          Defendant contends that "the overriding factor under § 3553(a) that was not present at the
13   time of sentencing is the COVID-19 pandemic and the serious risk it presents," and "the
14   sentencing purpose of just punishment does not warrant a sentence that includes exposure to a
15   life-threatening illness."  (Doc. No. 71 at 14.)  Defendant further contends that his conduct shows
16   that the purposes of punishment have been met because he is dedicated to rehabilitation, he
17   participated in a mental health treatment program before his incarceration, he has been a model
18   prisoner with no disciplinary issues, he continued his education by taking several (unspecified)
19   courses, and he has volunteered for the Suicide Watch Companions.  (Doc. No. 75 at 12–13.)  In
20   addition, defendant contends that his early release will not endanger the community because is a
21   first-time non-violent offender, and he did not reoffend during his two years of pre-trial release.
22   (*Id.* at 13.)

23          The government counters that "[n]othing about the COVID-19 pandemic reduces the
24   defendant's danger," which is "established by the nature of his conviction, specifically possession
25   of a matter that contains a visual depiction of a minor engaging in sexually explicit conduct."
26   (Doc. No. 72 at 13.)  In particular, the government notes that defendant Cannon "was in
27   possession and in fact traded child pornography" including "at least one depiction of a
28   prepubescent minor, as well as a toddler," and in doing so, "he continued to drive the demand for

it, which perpetuates the victimization of the youngest (and most defenseless) members of our communities." (*Id.* at 14.) The government also notes that although there was no documented evidence that defendant abused minor children, he had "made statements to at least one person via an instant messaging app indicating that he had engaged in sexual abuse of minors." (*Id.*) Thus, the government argues that defendant Cannon continues to present a danger to the community and points to the decision in *United States v. Mitchell*, 2:12-cr-00401-KJM, 2020 WL 2770070, at *3 (E.D. Cal. May 28, 2020), a case in which the court denied a compassionate release motion and recognized the inherent dangerousness of child pornography offenses. (*Id.* at 12–13.) In finding that the defendant in that case posed a danger to the community, the court noted that the defendant (1) committed his crime at home, which is where he wished to be released on home confinement; (2) had only served about one-third of his term of imprisonment; (3) and provided no information showing he had engaged in any sort of rehabilitation while incarcerated. *Mitchell*, 2020 WL 2770070, at *4.

    In his reply, defendant Cannon distinguishes the decision in *Mitchell* by noting that unlike the defendant in that case, who did not accept responsibility for his actions and had not shown evidence of rehabilitation, defendant Cannon "pled guilty to his crime and ever since has been focused on rehabilitation." (Doc. No. 75 at 13.)

    The court recognizes and commends defendant on his rehabilitation efforts, though rehabilitation alone is not enough to warrant compassionate release. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3. Moreover, if the requested relief were granted, defendant Cannon represents to the court that he would reside with his sister at her home in Bakersfield, which is located across the street from his prior residence where he committed the crime for which he was convicted and sentenced in this case, where he would have his own room. (Doc. No. 71 at 6; 71-3 at 1; *see also* Doc. No. 47 at 10.) The Presentence Report noted that while there is always a concern of recidivism in cases involving child pornography

/////

/////

/////

offenses, but that defendant Cannon

> differs from others convicted of similar offenses in that he has complied with almost two years of PTS supervision that includes location monitoring, he had a difficult childhood marked by an emotionally abusive father and reported sexual abuse by a friend's father, he has significant health issues that require medication and an external defibrillator, and he made efforts to address some underlying issues that could have contributed to the instant offense.

(Doc. No. 47 at 18.)  In light of these mitigating factors, consideration of the risk of recidivism on the part of the defendant weighs only to a slight degree against the granting of compassionate release. *Cf. United States v. Diaz-Diaz*, No. 15-cr-02982-BAS-1, 2020 WL 5257872, at *4 (S.D. Cal. Sept. 3, 2020) (denying compassionate release and finding credence in probation's determination at sentencing that defendant was at a high risk for recidivism).

Nonetheless, "[t]he length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 26148743, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences").  Here, as of the date of this order, defendant Cannon has served only about 21 months of his 108-month sentence, or approximately 19.1 percent.  (*See* Doc. Nos. 71 at 5; 72-1 at 4.)  Indeed, the statutory mandatory minimum sentence for defendant's offense of conviction was a five-year prison term, and defendant has not even completed serving that much time in prison. *See* 18 U.S.C. § 2252(b)(1).  In the court's view, a reduction of defendant's 108-month sentence effectively to one of less than two years would not adequately reflect the seriousness of his offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

/////

Thus, on balance, the court finds that granting defendant's motion and reducing his sentence to time served would not be consistent with the § 3553(a) sentencing factors.

**CONCLUSION**

Because defendant Cannon has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. Nos. 68, 71) is denied.

IT IS SO ORDERED.

Dated:   **October 16, 2020**          /s/ Dale A. Drozd
                                        UNITED STATES DISTRICT JUDGE